U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 0 8 2017

TONY R. MOORE, CLERK
BY: _____ MB
    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| **IRMA J. SMITH, ET AL.**<br>*Plaintiffs* | CIV. ACT. NO. 65-CV-11577 |
| **UNITED STATES OF AMERICA**<br>*Plaintiff-Intervenor*<br>versus | |
| **CONCORDIA PARISH SCHOOL BOARD, ET AL.**<br>*Defendants* | JUDGE DEE D. DRELL |

---

## MEMORANDUM RULING

This case ostensibly presents an aspect of a now common public issue over the establishment and operation of a charter school and the impact of its existence on a desegregating public school system. Here, the Delta Charter School in Concordia Parish, Louisiana was allowed to organize by consent from this court dated January 4, 2013. Doc. 60. The authorizing order was a consent order and had been negotiated by the school organizers and the Concordia Parish School Board ("Concordia"). However, only months after the school's organization, Concordia saw fit to file a motion with the court alleging that the charter school violated the order in several significant respects. After an extensive period of conversation among the parties, briefing, and preparation, the "Motion for Further Relief" (Doc. 68) filed by Concordia came before the court for a three-day evidentiary hearing on Monday, February 13, 2017. Doc. 126. Several last-minute motions were filed by the parties and these were argued on the record in open court and ruled upon contemporaneously. We will recount these rulings as we consider the underlying motion.

1

## I. RELEVANT BACKGROUND

Against the backdrop of this court's desegregation orders for Concordia Parish schools, Delta Charter School ("Delta") sought permission to operate as a Type 1 charter school[1] from Concordia. After consultation with a third-party reviewing agent affiliated with a national charter school association, Concordia declined Delta's application. Doc. 145., p.2. Delta was eventually granted a Type 2 charter by the Louisiana Board of Elementary and Secondary Education ("BESE").[2] Id. In recognition of the existing desegregation order, Delta and Concordia entered into a consent order which was filed with the court on September 7, 2012, and granted on January 4, 2013. Doc. 60. The consent order described the parameters under which Delta would conduct its operations upon opening and ascribed to Delta certain affirmative duties. Id.

Concordia filed the instant motion in June of 2014, alleging that Delta was already operating in violation of the consent order, seeking an order compelling Delta to abide by the terms of the consent order and requesting that it cease all actions interfering with Concordia's ability to comply with its own affirmative obligations under existing desegregation orders of this court. Concordia's motion also seeks recovery of a kind of penalty or damage in the form of reimbursement for the loss of Minimum Foundation Program ("MFP") funds from Delta. Doc. 68. Specifically, Concordia asserts that, since opening its doors in 2012, Delta has not observed its obligation to restrict its enrollment and to ensure that its student body mimics the racial diversity

---

[1] According to La.R.S. §17:3973(2)(b)(i), a Type 1 charter school is a "new school operated as the result of an pursuant to a charter between the nonprofit corporation created to operate the school and a local school board. Within such Type 1 charter schools, only pupils who would be eligible to attend a public school operated by the local school board within the same city or parish will be eligible to attend as provided in the charter."

[2] La.R.S. §17:3973(2)(b)(ii), provides that a Type 2 charter school is a "new school or a preexisting public school converted and operated as the result of an pursuant to a charter between the nonprofit corporation created to operate the school and [BESE]... Within such Type 2 charter schools, pupils who reside within the state will be eligible to attend as provided in the charter. Creation of a Type 2 charter school shall comply with the provisions of R.S. 173983(A)(2)(a)(i).

of the parish within a 10% margin of compliance. Concordia further alleges that Delta's failure to adhere to the obligations of the consent judgment harmed Concordia financially by diverting MFP funds associated with Delta's excess enrollment away from Concordia schools. Id.

Delta denies that it has violated the consent order. Doc. 70. Delta's brief in opposition disputes Concordia's assertion that the consent order limits Delta's enrollment to a specific number. Rather, Delta views the consent order as summarizing what Delta believed its opening enrollment would be for the 2012-2013 school year. Doc. 70 at p. 4. Delta further denies that it has impeded the ability of Concordia to meet its obligations under the desegregation order. Id. at pp. 5-7. Based on these denials, Delta concludes that Concordia fails to demonstrate that it is entitled to relief and strenuously argues that the relief sought by Concordia's motion is overly broad and not narrowly tailored to any harm alleged. Id. at p. 8.

Just before the trial, Delta filed its own "Motion for Relief from Order or in the Alternative Motion to Dismiss [Concordia's] Motion for Further Relief". Doc. 145. Delta's motion asserted that, despite Delta's having at all times operated in good faith to fulfill its obligations under the consent judgment, its minority student enrollment remains consistently below the goal of 10% of Concordia Parish School District's (CPSD) minority student enrollment. Based on its assertion of its own good faith and best efforts, Delta asked that the court dismiss Concordia's motion for relief. Doc. 145-1 at p. 3. In supposed support of its position, Delta offered the expert report of Dr. Christine Rossell ("Dr. Rossell"), opining that Delta's operations have had no negative impact on the racial makeup of CPSD schools. Based on this evidence, Delta said Concordia's failure to show any impact on Concordia's ability to meet its obligations under this court's desegregation order is fatal. Id. at pp. 4-5.

3

In response to Delta's motion, Concordia and the United States Department of Education ("United States") filed a joint motion *in limine* to exclude the expert opinion testimony of Dr. Rossell. Doc. 147. Likewise, a prior "Daubert" motion was filed pursuant to Rule 702 of the Federal Rules of Evidence by Delta as to Dr. Genevieve Siegel-Hawley ("Dr. Siegel-Hawley"), a proposed expert witness offered by Concordia. Doc. 139.

On Day 1 of the February 13, 2017 hearing, the court declined to entertain Delta's motion for relief/dismissal (Doc. 145) on the basis that to do so would constitute unfair and undue prejudice to the remaining parties. The court's ruling was and is based on the fact that the motion was filed on February 10, 2017, a mere three (3) days prior to the long-filed motion and long-noticed hearing. Moreover, the court found that the motion's content, specifically its reliance on the surprise, newly-revealed, expert witness Dr. Rossell, was unduly prejudicial because it purported to rely upon an unacceptably tardy disclosure of the existence of the expert's expert report and expert opinion, which, upon presentation, left the opposing parties NO time to investigate or conduct discovery related to this expert witness or even to respond with briefs regarding her professional opinions. Despite the ruling denying and declaring Delta's motion moot, and excluding her "expert", counsel for Delta proposed that the expert should still be allowed to testify as a rebuttal witness. This request was likewise denied, as Delta was the defendant, not the plaintiff on motion, and would not be in a position to offer rebuttal testimony in any event. Thus testimony from Dr. Rossell was excluded. In this procedural posture, the remaining pending findings were and are properly restricted only to those issues raised by Concordia's motion for relief.

On Day 2 of the hearing, however, the court accepted Dr. Siegel-Hawley as an expert in the field of school desegregation and the impact of school choice on desegregation efforts. By this

4

result, the court denied Delta's Daubert motion. Doc. 139. At the conclusion of all argument and evidence, the court announced its finding that Delta was not in compliance with the consent order. Additionally, the court found that Delta's compliance with the consent order was, by virtue of its terms and the court's authority to compel compliance as relates to its prior desegregation orders, required. The court then instructed the parties to file briefs regarding the issues of appropriate remedies and the merits of Concordia's theory of monetary recovery. Having received and reviewed all necessary briefs on both issues we now find all issues ripe for decision.

## II. FINDINGS OF LAW AND FACT

As detailed above, we have already ruled that, based upon the evidence presented in briefs and at the hearing of this matter, Delta did not adhere to the terms of the consent judgment into which it voluntarily entered in 2013. Its deliberate noncompliance has substantially impacted Concordia's compliance with ongoing desegregation orders, such impact being explained by the courtroom evidence elicited. Moreover, at the hearing, Delta's founder and headmaster testified that all he thought he needed to do to increase enrollment was to get authority from BESE to increase enrollment. That conclusion was clearly wrong in view of the court's original consent order. To make things worse, we note that Delta, while supposedly relying on Louisiana law for its operation, also apparently ignored the enabling provisions of that law. In that regard, we note the following:

1. La. R.S. 17:3991and 17:3973 prescribe minimum and maximum percentages of "at risk" enrollment for Type 2 charter schools. The requirements are calculated based upon the number of students enrolled in public schools in the area who qualify for free or reduced lunch. Compliance with these numbers has not been shown in the evidence presented by Delta.

2. Under R.S 17:3993(b)(ii), any student who resides "within the state" shall be eligible to attend a Type 2 charter. See, Cleveland v. Union Parish School Board, 570 F.Supp.2d 858 (W.D. La. 2008).

5

Apparently, to facilitate such attendance, Louisiana charter school law permits charter schools to have transportation provided by the local school district, but requires that the charter school reimburse the school district for that cost. La.R.S. 17:3993(D). Delta provides no transportation for any students to facilitate its supposed efforts to maintain racial balance.

Considering the substance of Louisiana charter school law, we find that Delta was neither in compliance with that law, nor the consent judgment. This undercuts any argument by Delta (not made in briefs but alluded to at the hearing) that it felt it needed only seek approval of BESE.[3]

Prior to addressing remedies, we finally address further the BESE approval issue underlying Delta's defense. Specifically, because of Delta's misplaced understanding of its obligations, and to clear up any confusion on Delta's part regarding the hierarchy of authorizations and the approval it must seek and be granted in order to implement changes outside of the consent judgment, we observe the following. Again, according to Delta's testimony before the court, Delta understood its obligations for permission to flow only from BESE, the grantor of its Type 2 charter. This is error. This court possesses jurisdiction over Concordia Parish school desegregation by virtue of its basis in the Constitution, posing a federal question for our review. Wright v. Council of City of Emporia, 407 U.S. 451, 459 (1972). We retain jurisdiction over this matter and possess the authority to issue and enforce ancillary orders and judgments necessary for the continued oversight of Concordia's desegregation efforts and, more specifically, the enforcement of its prior desegregation order. 28 U.S.C. §1331; Augustus v. School Board of Escambia County, Florida, 507 F.2d 152 (5th Cir.1975). In terms of size, Concordia Parish is a relatively small school system with a limited number of schools (approximately 3334 students and eleven (11) schools ranging

---

[3] The National Alliance for Public Charter Schools, www.publiccharters.org, provides information on rules in each state. The Tulane University Cowen Institute for Public Education Initiatives, www.coweninsitute.com, provides examples of charter school vital documents such as applications, financial audits, and enrollment data compilations.

from elementary to high school). The matter of maintaining racial balance is therefore a delicate matter, even when responsible people are attempting to work together. In this mix, as the consent order recognized, Delta is an outlier and its orderly organization and progression is necessary to prevent an upsetting of the delicate balance. For these reasons, it was and is incumbent upon Delta to seek authorization from this court first when proposed changes are sought to its enrollment or other operations which may impact the fulfillment of its obligations under the consent judgment.

### III. REMEDIES

To begin, we note that we are not in a position to rule upon the hotly-debated national policy issue regarding whether charter schools generally do or do not inherently foster or deter desegregation. This national debate will undoubtedly continue. Here, we only decide whether THIS charter school is in compliance with a consent order entered during this ongoing segregation case. We are not, thus, of the opinion that charter schools may not be a worthy endeavor, nor do we say that this charter school should cease to exist at this juncture, given the facts before the court. Yet, we are obliged, in light of our finding that Delta's attempts to comply have not at this point been in good faith, to address the following areas of recruitment, diverse staffing, transparent application and enrollment procedures, and policy formulation. These are all essential elements of what the court envisions to be a successful charter school within the parameters of applicable law, our prior desegregation order and the parties' voluntary consent.

Input from the parties in their briefs on proposed remedies is as mixed as input could be. While this is not surprising, we believe that fixing the current problems requires not the seemingly draconian recommendations from the Justice Department. Likewise, we reject the "we have done nothing wrong and we should be left alone" approach posited by Delta. To reiterate, Delta has

7

clearly not complied with the consent order to say the least, and it has attempted to move rapidly forward with its own agenda while only winking at its court ordered obligations. This will stop.

The court much prefers the generally balanced approach set forth by Concordia in its remedial briefing, with modifications. The approach we elect here is designed to test whether Delta can ever comply with its obligations, but under the following guidance, it will still be given that chance to do so. To facilitate these corrective methods, we place the following requirements on Delta beginning with the 2017-2018 school year:

1. Enrollment at Delta shall be limited to 350 students from Concordia Parish. Additional students may be added from other parishes NOT under current desegregation orders unless permission for students in court-supervised parishes is granted after contradictory hearing with the affected school boards;
2. Delta shall create a Diversity Committee which shall operate with the purpose of increasing minority student enrollment. In so establishing the Diversity Committee, Delta shall:
    a. establish the Diversity Committee within sixty (60) days of the date of this order.
    b. recruit members from the community to serve on the committee noting that at least 50% of the membership shall be comprised of minority community leaders and at least 50% of the membership shall be comprised of African-Americans.
    c. provide the names and races of each committee member to the court, a third party consultant/ Special Master, CPSB and the United States within sixty-seven (67) days of this order.

d. provide that the Diversity Committee shall meet at least one time per month for the twelve (12) months beginning August 2017. The membership shall receive input from the minority community prior to discussing and implementing a required student recruitment plan including specific recommendations of recruitment strategies and specific ways to evaluate the effectiveness of the recruitment strategies. The Committee will, in consultation with the special master, recommend changes or additions to the recruitment plan and Delta would make a good faith effort to implement the Committee's recommendations regarding all recruitment strategies.

3. The court intends to designate a Special Master pursuant to Federal Rule 53 of the Federal Rules of Civil Procedure.[4] The parties are offered the opportunity to submit candidates for this appointment but the Court has noted the experience of Dr. Percy Bates of the University of Michigan. The court is familiar with his substantial expertise and actual experience working with Louisiana schools in desegregation mode. He has testified as an expert witness in such matters many times and has directly worked with school boards seeking to comply with desegregation requirements. Any additional candidate submissions by the parties shall be made in writing to the court on or before **Friday, June 30, 2017**. Thereafter, the appointment will be made.

Once appointed, the Special Master shall be responsible for ensuring:

a. that Delta fosters the Diversity Committee discussed *supra*;

---

[4] Federal Rule of Civil Procedure 53 provides that the court must give advance notice to the parties of its intent to designate a special master and that any part may suggest candidates for appointment. An order designating the master must carefully detail his or her duties, as well as provide for all issues regarding compensation of the master. The master must file an affidavit disclosing any grounds for disqualification if the parties consent to the disclosed ground for the same.

b. that the Diversity Committee meets regularly and creates a minority student recruitment plan;

c. that Delta implements the recommendations of the Diversity Committee and reports to the parties and/or this if and when it fails to do so;

d. that Delta creates a properly documented waiting list for admission to the school and a fair and impartial lottery process for enrollment.

e. that the parties and this court are provided quarterly reports detailing recruitment efforts undertaken in the prior ninety (90) days as well as the effectiveness of those efforts;

f. that the elimination of disparate treatment and disparate impact on minority students with respect to the: (1) disciplining of students, (2) their ability to participate in extracurricular activities, and (3) transportation services provided to students;

g. that the acceptance of a student applicant would not negatively affect a desegregation order of the student's "home" school/district;

h. that Delta recruits and retains minority teachers and administrators and that all hiring practices be conducted on a non-discriminatory bases; and

i. that Delta otherwise complies with the provisions of this court's Consent Order.

The role of the Special Master in this case shall be to work with and monitor Delta's efforts to provide guidance and direction in meaningful ways for Delta to become and remain in compliance, to report to the court by January 2018 on the progress and implementing necessary changes, and to make recommendations to the court on actions, if any, in all

compliance areas for the 2018-2019 school year. Delta shall be responsible to pay promptly all fees and expenses of the Special Master appointed.

It is the court's intention then for Delta to utilize the 2017-2018 school year as an opportunity to prove its profession of good faith in compliance with its obligations and to ensure that the school operation does not alter the desegregation efforts of Concordia to a significant degree. Put succinctly, we implement this plan with the intention and hope that this Delta and Concordia can successfully co-exist; yet, we will remain vigilant to ensure that the law regarding desegregation there is effectively implemented.

Turning now to the issue of Concordia's request for relief in the form of return of MFP funds, we find that an important, potentially dispositive, issue is currently being considered by the Louisiana Supreme Court; therefore, we decline to issue our ruling until we have heard the ruling from that court. The case, <u>Iberville Parish School Board v. Louisiana State Board of Elementary and Secondary Education</u>, 2017 WL 90541 (Jan 9, 2017) is sent to Louisiana's high court on appeal from the ruling of the state First Circuit Court of Appeal. The appellate court reversed the trial court's funding, resulting in a declaration that "new Type 2" charter schools are not public schools within the meaning of the Louisiana Constitution and, therefore, have no right to access MFP funds. Given the state law implications of any ruling on this issue (and indeed the substantial impact on charter schools in general), we await the ruling of the Louisiana Supreme Court before proceeding.

Concordia's request for attorney's fees and costs will be considered by separate motion including consideration of the lodestar and after further briefing of the parties.

## IV. CONCLUSION

For the foregoing reasons, the motion of Concordia for relief (Doc. 68) is GRANTED in part. Conversely, Delta's motion for relief or to dismiss (Doc. 145) is DENIED. The parties shall each notify the court regarding their input, if any is desired, for appointment of a special master on or before June 30, 2017. Concordia's requests for monetary remedy and attorney's fees will be addressed in one or more future rulings.

**Alexandria, Louisiana**
**June 7, 2017**

**DEE D. DRELL, CHIEF JUDGE**
**UNITED STATES DISTRICT JUDGE**