# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA, ALEXANDRIA DIVISION

| | |
|---|---|
| IRMA J. SMITH, et al., *Plaintiffs*, And UNITED STATES OF AMERICA *Plaintiffs-Intervenor*, v. CONCORDIA PARISH SCHOOL BOARD, et al., *Defendants*. and DELTA CHARTER GROUP, INC., *Defendant-Intervenor*. | Civil Action No. 65-CV-11577 Judge Dee D. Drell Magistrate Judge Joseph Perez-Montes |

**BRIEF OF *AMICI CURIAE* THE NAACP LEGAL DEFENSE FUND AND THE LOUISIANA STATE CONFERENCE OF THE NAACP**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.     Delta Bears the Burden of Demonstrating that It Has Complied in Good Faith with the Desegregation Decree and Eliminated the Vestiges of Racial Discrimination to the Extent Practicable. ................................................................................................. 2

    II.    Delta Charter Group Failed to Carry Its Burden of Demonstrating It Is Entitled to Be Released from Judicial Supervision of Its Desegregation Obligations. ............ 4

CONCLUSION .................................................................................................................. 6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. St. James Par. Sch. Bd.*,
  757 F. App'x 326 (5th Cir. 2018) ...................................................................................3, 4

*Borel v. Sch. Bd. Saint Martin Par.*,
  44 F.4th 307 (5th Cir. 2022) ................................................................................................5

*Davis v. E. Baton Rouge Sch. Bd.*,
  721 F.2d 1425 (5th Cir. 1983) .............................................................................................3

*Flax v. Potts*,
  915 F.2d 155 (5th Cir. 1990) ...............................................................................................6

*Monteilh v. St. Landry Par. Sch. Bd.*,
  451 F.2d 1348 (5th Cir. 1972) .............................................................................................5

*Moses v. Wash. Par. Sch. Bd.*,
  379 F.3d 319 (5th Cir. 2004) ............................................................................................3, 4

*Smith v. Sch. Bd. of Concordia Par.*,
  88 F.4th 588 (5th Cir. 2023) .............................................................................................1, 2

*Smith v. Sch. Bd. of Concordia Par.*,
  906 F.3d 327 (5th Cir. 2018) .....................................................................................1, 2, 3, 4

*Thomas v. St. Martin Par. Sch. Bd.*,
  879 F. Supp. 2d 535 (W.D. La. 2012), *aff'd sub nom. Thomas v. Sch. Bd. St.
  Martin Par.*, 756 F.3d 380 (5th Cir. 2014) .........................................................................5

*United States v. Kemper Cnty. Bd. of Educ.*,
  No. 3:66-CV-01373-CWR-FKB, 2022 WL 180652 (S.D. Miss. Jan. 19, 2022) .................3

**Other Authorities**

Fed. R. Civ. P. 60(b) ..................................................................................................................2, 6

## BACKGROUND

*Amici* adopt their prior statements on the relevant factual background. *See* ECF No. 439-1, at 3–4.

This case began as a class-action lawsuit on behalf of "all Negro citizens similarly situated" to desegregate Concordia Parish School District ("District" or "Board"). Docket, ECF No. 1, at 1. The United States intervened as a plaintiff in 1966. *Id.*

In 2012, Delta Charter Group ("Delta") intervened in this case, requesting permission to operate a public charter school in Concordia Parish. *Smith v. Sch. Bd. of Concordia Par.* ("*Smith I*"), 906 F.3d 327, 330 (5th Cir. 2018). This Court "granted permission after Delta and the Concordia Parish School Board entered into a consent decree obliging Delta to, among other duties, comply with the desegregation order; not impede the Board's ability to comply with the desegregation order; and enroll a student body with racial demographics reflecting the demographics of the Concordia Parish School District as a whole." *Id.* The consent order made explicit that Delta is "governed by and that it will comply with the desegregation obligations mandated by this case." *Id.* (quoting the consent decree).

In 2017, this Court ruled that Delta violated the consent order by recruiting white teachers away from the District and enrolling a largely white student body. *Id.* at 335–36. Delta appealed that decision and the Fifth Circuit generally affirmed this Court's order. *Id.* The Fifth Circuit held that Delta is bound by the desegregation orders in this case as well as the terms of the consent decree.[1] *Id.*

On remand in 2018, Delta and the United States entered into another consent order. *Smith v. Sch. Bd. of Concordia Par.* ("*Smith II*"), 88 F.4th 588, 592 (5th Cir. 2023). In 2022, Delta again

---

[1] The Fifth Circuit vacated a single provision of the ordered relief pertaining to parishes outside of Concordia Parish. *Smith I*, 906 F.3d at 336.

1

moved to modify the 2018 consent order under Federal Rule of Civil Procedure 60(b)(5), which this Court denied in full. *Id.* The Fifth Circuit affirmed that ruling. *Id*. at 596.

On August 15, 2025, the United States and the Board filed a purported "Joint Stipulation of Voluntary Dismissal" signed by the District, the United States, and Delta. ECF No. 437. The Board then filed a motion requesting that the Court vacate its prior orders in this case pursuant to Federal Rule of Civil Procedure 60(b)(5). ECF No. 438. Proposed *Amici* moved to file a brief in opposition to both the motion to vacate and purported stipulation of dismissal. ECF No. 439.

On August 29, 2025, Delta filed a motion to vacate its obligations under the Consent Order pursuant to Rule 60(b)(5). ECF No. 442.

## ARGUMENT

I.  **Delta Bears the Burden of Demonstrating that It Has Complied in Good Faith with the Desegregation Decree and Eliminated the Vestiges of Racial Discrimination to the Extent Practicable.**

Delta misstates the applicable standard for its request to be released from the desegregation orders. Delta argues that it is "entitled to dismissal because it is undisputed that Delta is not interfering with the desegregation obligations of the Concordia Parish School Board." Mem. in Supp. of Mot. of Delta Charter Grp. to Dissolve Consent Decrees ("Delta Br.") 4, ECF No. 422-1. This, however, is insufficient. Like the other parties in this litigation, Delta bears the burden of demonstrating that it has eliminated the vestiges of prior *de jure* segregation to the extent practicable.

"While a desegregation order remains effective, the district court has a constitutional duty to enforce the order and to ensure that the school district takes all steps necessary to eliminate the vestiges of the unconstitutional *de jure* system." *Smith I*, 906 F.3d at 331 (cleaned up). Courts "may take steps to preserve the integrity of the desegregation process and ensure external parties do not

2

impede the District's desegregation efforts." *United States v. Kemper Cnty. Bd. of Educ.*, No. 3:66-CV-01373-CWR-FKB, 2022 WL 180652, at *4 (S.D. Miss. Jan. 19, 2022). Thus, new public schools or school districts that derive from existing school districts subject to school desegregation orders "must prove the availability of procedures, methods, and agreements that will avoid any adverse impact upon the present federal plan of desegregation and support implementation of those procedures." *Smith I*, 906 F.3d at 331 (cleaned up) (quoting *Valley v. Rapides Par. Sch. Bd.*, 173 F.3d 944, 945 (5th Cir. 1999) (en banc)); *see also Davis v. E. Baton Rouge Sch. Bd.*, 721 F.2d 1425, 1435 (5th Cir. 1983). Charter schools may not circumvent this scrutiny. *See Smith I*, 906 F.3d at 331.

Accordingly, when considering whether to release a charter school from a desegregation order, courts will consider whether the charter's continued operations "undermine the ongoing desegregation order and [the Court] may impose conditions on the school's operation if necessary." *Id*. The charter school must demonstrate that its operations will not disrupt the existing plan for the District to complete unitary status. *Moses v. Wash. Par. Sch. Bd.*, 379 F.3d 319, 327 (5th Cir. 2004).

Despite the clarity of the Fifth Circuit's prior orders in this case, Delta relies on the unpublished opinion in *Banks v. St. James Parish School Board*, 757 F. App'x 326 (5th Cir. 2018), to suggest that it faces a lower standard in order to be relieved of its obligation to demonstrate full compliance with the Consent Orders. *See* Delta Br. 9. But Delta's reliance on *Banks* is unavailing at best and misleading at worst.

In *Banks*, the Fifth Circuit held that it was "undisputed that La. Stat. Ann. § 17:3991(C)(3) demands that [the charter school] is compliant with the 1967 desegregation order." 757 F. App'x at 330. The Fifth Circuit then remanded the case back to the district court to consider the procedural

3

propriety of the charter school's joinder as "a necessary or indispensable party." *Id.* at 332. Nothing in *Banks* purports to lower the standard of districts or charters seeking to be released from a desegregation order. Rather, like the private school at issue in *Moses v. Washington Parish School Board*, the creation of which post-dated the district's *de jure* segregated school system, Delta "cannot change the past, but it must do what it can, in good faith, to eliminate the past vestiges of discrimination" and "make meaningful progress toward becoming a fully integrated non-discriminatory school with respect to all facets of its operation." *Moses*, 379 F.3d at 327.

Contrary to Delta's assertions that "[t]he concepts and analysis underpinning the law of unitary status simply do not and cannot apply to Delta Charter School," Delta Br. 9, in 2018 the Fifth Circuit upheld this court's determination that Delta was both subject to the consent decrees and had "violated the consent decree." *Smith I*, 906 F.3d at 335. The Fifth Circuit also directly stated that "[t]he record as a whole supported the district court's findings of noncompliance." *Id*. at 336. In light of the Fifth Circuit's prior determination that Delta is subject to the desegregation obligations in this case, the Court should reject Defendant Delta's request to vacate the consent orders without first requiring Delta to prove that it has satisfied its obligations under the consent order and met its burden of demonstrating unitary status.

## II. Delta Charter Group Failed to Carry Its Burden of Demonstrating It Is Entitled to Be Released from Judicial Supervision of Its Desegregation Obligations.

On the face of its briefing, Defendant Delta clearly fails to meet its burden of demonstrating compliance with the Consent Orders with regard to multiple *Green* factors.

With regard to the discipline factor, Defendant Delta does not dispute that the consent orders in this action require "elimination of disparate treatment and disparate impact on minority students with respect to the: (1) disciplining of students, (2) their ability to participate in extracurricular activities, and (3) transportation services provided to students." Delta Br. 8. Even

4

so, Delta nevertheless asserts that it has complied in full with this requirement by "consult[ing] with a representative of the Louisiana Department of Education regarding student discipline and the PBIS initiatives of Delta." *Id.* at 8–9. Delta's request to this Court to find that it has complied with the requirement that it eliminate race-based disparities in discipline without Delta even confirming whether disparities currently persist in its discipline of students willfully ignores the burden under federal law. *See Borel v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307 (5th Cir. 2022) (affirming the denial of unitary status where a school district failed to address ongoing racial discrimination in discipline).

Likewise, regarding the faculty and staff assignment and employment factors, Delta references a requirement from the 2013 and 2017 Consent Orders that it "recruit and retain minority teachers and administrators and that all hiring practices be conducted on a non-discriminatory basis." Delta Br. 8. However, the single argument Delta puts forth to carry its burden of demonstrating compliance with this requirement is the conclusory assertion that "[f]or the current school year . . . 7.1% of the full-time teachers are [B]lack." *Id.* Delta makes no effort to demonstrate compliance beyond this school year and cites no evidence in the record of its purported compliance for the instant academic year. This paltry showing fails to satisfy Delta's high burden for release from judicial supervision. *See Borel*, 44 F.4th at 313–14. Moreover, a demonstration of compliance with the requirements of a consent order for a single year is insufficient to confer unitary status. *See, e.g.*, *Thomas v. St. Martin Par. Sch. Bd.*, 879 F. Supp. 2d 535, 547 (W.D. La. 2012) (collecting cases), *aff'd sub nom. Thomas v. Sch. Bd. St. Martin Par.*, 756 F.3d 380 (5th Cir. 2014); *see also Monteilh v. St. Landry Par. Sch. Bd.,* 451 F.2d 1348, 1348–49 (5th Cir. 1972) (requiring district court to retain jurisdiction for three years to ensure that no "deliberate action by the school authorities or some other agency of the State has affected the

5

unitary status of this system so that further intervention of the district court is required."); *see also Flax v. Potts*, 915 F.2d 155, 158 (5th Cir. 1990) ("A district court in this circuit does not dismiss a school desegregation case until at least three years after it has declared the system unitary.").

Finally, Delta's single conclusory assertion that "all students are free to choose any extracurricular activity regardless of race, and transportation is not segregated," Delta Br. 9, fails to provide any evidence or other data to allow the Court to analyze its position.

As explained in *Amici*'s prior brief, Rule 60(b)(5) is a procedural mechanism that cannot displace binding "substantive law," *See* Fed. R. Civ. P. 60(b) Advisory Comm. Note to 1946 Amend.; *Amici* Br. 17–18, ECF No. 439-1. Accordingly, because Delta Charter Group cannot meet the requirements of the substantive law when it comes to demonstrating unitary status, Defendant Delta's Rule 60(b)(5) motion must fail.

## CONCLUSION

For the foregoing reasons, the Court should deny Delta Charter Group's motion for vacatur pursuant to Rule 60(b)(5).

Respectfully submitted this 5th day of September, 2025.

*/s/ Gideon T. Carter*
Gideon T. Carter, III
Bar Roll Number 14136
P.O. Box 80264
4962 Florida Blvd FL4 (70806-4031)
Baton Rouge, LA 70898-0264
T: (225) 214-1546
F: (225) 341-8874

Alexsis M. Johnson*
Allison Scharfstein*
Colin Burke*
Jory Burks*
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor

New York, NY 10006
T: (212) 965-2200

Deuel Ross*
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
T: (202) 682-1300

Counsel for Proposed *Amici*

*Motions for Admission *Pro Hac Vice* Forthcoming