UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **VERNON SMITH ET AL** | **CASE NO. 65-cv-11577** |
| -vs- | **JUDGE DRELL** |
| **SCHOOL BOARD OF CONCORDIA PARISH** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## RULING

Before the court is a pleading entitled "Joint Stipulation of Dismissal" (Doc. 437), filed by all parties, and a motion proposing that all existing orders imposing obligations on defendants be vacated. The net effect stated in these requests is to return control of the Concordia Parish school system to the locally constituted school board. If granted, the motion would end all stewardship over the system by this court.

This case has a storied history, having been filed in 1965, sixty years ago. In Brown v. Board of Educ. of Topeka, Kan., 347 U.S. 483 (1954), 349 U.S. 294 (1955), the United States Supreme Court, in overruling Plessey vs. Ferguson, 163 U.S. 537 (1896), determined that segregation could no longer be sustained as a matter of law, in its ruling that "separate but equal" is inherently unequal. Federal courts were given the task of taking jurisdiction over segregated schools, with the goal of fixing the problems and ultimately returning supervision of the schools "with all deliberate speed." Brown, 349 U.S. at 301. It did not turn out that way. Desegregation cases, like this one, dragged on for many years, even though much of the initial emotional clash of titanic proportions calmed down to where we are today. In the record of the instant case, there have been orders, modification of orders, revisions, and the like.

Many of the recent filings in this case have involved a somewhat unusual situation that stems from a tangential matter. In collateral but in-suit proceedings, this court allowed Delta Charter Group to intervene for the purpose of obtaining authorization from this court to form a charter school in Concordia Parish named Delta Charter School of Math, Science and Technology ("Delta Charter School"). (Doc. 22 and 60). The nature of the relationship and its own requirements for compliance with Concordia Parish School Board's ("CPSB") desegregation plan has been the subject of motion practice before this court, and the Fifth Circuit Court of Appeals. See Smith v. School Board of Concordia Parish, No. 65-CV-11577, 2013 WL 12140135 (W.D. La. Jan. 04, 2013); No. 65-CV-11577, 2017 WL 2508197 (W.D. La. Jun. 08, 2017); 906 F.3d 327 (5th Cir. 2018); No. 65-CV-11577, 2022 WL 17406335 (W.D. La. Dec. 2, 2022); 88 F.4th 566 (5th Cir. 2023).

At this point the parties remaining in this case are Intervenor Plaintiff United States of America through the Civil Rights Division of the Justice Department (the Government); Defendant School Board of Concordia Parish ("CPSB") represented by its long-time counsel Hammons and Associates and more recently by the Louisiana Attorney General as co-counsel; and Intervenor Delta Charter Group, Inc. which is represented by Adams & Reese. Recently these parties have moved this court to dismiss this litigation in its entirety by filing a proposed "Joint Stipulation of Dismissal" (Doc. 437), purportedly based upon an application of Fed.R.Civ.P. 41(a)(1)(A)(ii) which provides in pertinent part that "the plaintiff may dismiss an action without a court order by filing: a stipulation of dismissal signed by all parties who have appeared." We note in passing that this portion of Rule 41 does indeed provide on its face for dismissal by stipulation where the parties agree. However, the text of the rule is not unequivocal on its face, and the case law surrounding that rule is useful in figuring out what to do here.

We observe two salient points about Rule 41 stipulations. Relevant case interpretations show that the usual situation for Rule 41 stipulations is for filing of the stipulation much earlier in the case, not after many years of contested litigation. More importantly, it is not required that a court accept and enter a proposed stipulation of dismissal particularly when the protection of others and/or judicial or public policies are at issue. See <u>Green, v. Nevers</u>, 111 F.3d 1295 (6th Cir. 1997); <u>Andrews v. Blick Art Materials, LLC</u>, 286 F.Spp.3d 365, 370 (E.D. N.Y. 2017); <u>U.S. v. Mercedes-Benz of North America</u>, 547 F.Supp 399 (N.D. Cal. 1982). At the heart of this case is public policy and the protection of others, and the court has been tasked with ensuring the resolution of this matter in accordance with long established legal precedent.

In <u>Brown</u> the Supreme Court set forth the way desegregation cases should be handled; leading hopefully to a future of justice and racial harmony and a just adjudication of rights of a protected group of people so that " as much as practicable" certain factors from <u>Green v. County School Bd. of New Kent County, Va.</u>, 391 U.S. 430 (1968) ("<u>Green</u> factors")[1] can be satisfied. One of the reasons that desegregation cases have dragged on for so many years is that they are fact intensive, and unitary status is a moving target. Every school and every school system remain in flux. Whether it concerns the adequacy of school premises or the qualification of teachers, or any other <u>Green</u> factor, the matter must be addressed so as to ensure the betterment of the students' learning environment. Having brought a number of school systems to unitary status, we are the first to admit that doing so involves a balancing act of the most difficult kind.

Our efforts to date have been to insist that Delta do what it contracted to do in its charter enabling consent order (Doc. 60 ), and to both encourage and require CPSB to work on satisfying

---

[1] The <u>Green</u> factors are six in number: (1) student assignment, (2) transportation, (3) physical facilities, (4) extracurricular activities, (5) faculty assignments, and (6) resource allocation.

the Green factors so that unitary status can be reached. That being the case, both the CPSB and Delta have been on different but complementary tracks with the same end - unitary status.

We have no desire nor predilection to complicate this case longer. However, we believe we are obliged under Brown and its progeny to reach a conclusion based on the record, based on evidence such that we may be able to make specific findings as to the Green factors. Accordingly, we will need a hearing with evidentiary presentation to hopefully find that the parties have (or have not) reached sufficient Green factor compliance to warrant a declaration of unitary status and dismissal..

By order, we will set separate hearings as to CPSB and Delta. The goal of these hearings will be to allow a full opportunity for CPSB and Delta to present compliance and/or Green factor evidence, where applicable, and further evidence that each of them is, as of now, in compliance with the prior orders of this court. In these hearings, as far as evidence goes, it will be CPSB's and Delta's burden of proof to present sufficient evidence of satisfaction of their obligations. In requiring these hearings, it is not the intention of the court to prolong the litigation any further, as the court understands the proposed Rule 41 stipulation represents the stated wish of the remaining parties to effect an end to this sixty-year-old case. That said, neither is it the court's wish to prolong things beyond that necessary to have a showing of unitary status on the record. Dates for said hearings will be confirmed by order produced contemporaneously herewith.

THUS DONE AND SIGNED at Alexandria, Louisiana this 19th day of November 2025.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT